CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 2 1 2018
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JEFFREY DAVID WALDEN, | ) | CASE NO. 7:17CV00398 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARK, | ) | By: Hon. Michael F. Urbanski |
| Respondent. | ) | Chief United States District Judge |

Jeffrey David Walden, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Pittsylvania County Circuit Court. Respondent[1] filed a motion to dismiss Walden's § 2254 petition, and Walden failed to respond, making the matter ripe for disposition. After review of the record, the court concludes that Walden's petition is partially procedurally defaulted and ultimately without merit, requiring the motion to dismiss to be granted.

I. Background

On the night of August 24, 2013, Walden's then-wife Sandra Walden, Sandra Walden's daughter, Wendy Mitchell, and Mitchell's teenage daughter, J.M., were all at Mitchell's boyfriend's residence. The Court of Appeals of Virginia established the following facts regarding the events of that night:

> Mitchell testified Walden and [J.M.] were very upset when they arrived at the residence. About ten minutes later, Mitchell saw through a window that appellant was walking up the steps to the front door of the residence. Appellant was carrying a pistol. Mitchell did not open the door, and she told

---

[1] Petitioner listed Respondent as "Harold Clark," which the clerks' office docketed. The correct spelling of the VDOC Director is Harold Clarke.

appellant to leave. Mitchell testified appellant tried to open the door and he said he was "there to kill that bitch and if anything or anybody got in the way he was going to kill them too." Mitchell stated appellant eventually broke in the door and reached in with the gun. She testified appellant put the gun to her head and said, "I come here to kill all three of you all bitches and you're going to be the first one to die today." Mitchell was able to shut the door again, but appellant continued to push against it, repeatedly stating he was going to "kill that bitch." Mitchell heard a gunshot, and appellant entered the residence. Mitchell and appellant wrestled as [Sandra] Walden ran out of the back door. Mitchell struggled with appellant as he tried to get to the back door. They eventually went onto the back porch, and [Sandra] Walden was trying to climb over the fence in the backyard. Mitchell testified she and appellant were "wrestling over the gun and he shot at [Sandra Walden]." Mitchell struck appellant's hand onto the deck railing, and he dropped the gun. [J.M.] retrieved the gun and fled to a neighbor's residence. Mitchell testified appellant said, "You stupid bitch, I have another gun in the truck." Mitchell stated appellant looked for something in his truck and then he went to [Sandra] Walden's parked car, raised the hood, and was "doing something." The women then fled the residence.

Mitchell's thirteen-year-old daughter, J.M., testified she heard appellant say he "was going to kill all of us." She also stated she saw appellant break through the door, put the gun to her mother's head, and threaten to kill her. J.M. testified appellant pointed the gun at [Sandra] Walden and fired it just before Mitchell caused the gun to fall from appellant's hand to the ground.

[Sandra] Walden testified she saw appellant at the front door of the residence, beating on the door with the gun. She also heard him say he was going to kill "that bitch today" so she fled out of the back door. She testified she was trying to climb over the back fence when she heard two gunshots, arguing, and scuffling.

A witness who was fishing in a nearby lake at the time of the incident testified he heard a man and woman screaming and yelling and he heard several gunshots.

Appellant testified he went to the residence to talk to his wife and the gun was in a back pocket of his pants. He stated Mitchell would not let him into the residence. Appellant did not recall threatening to kill Mitchell. However, he stated he "could have" said that, but he would not have meant it. He also did not know if he threatened to kill his wife. Appellant admitted that he pushed his way into the residence, but he denied that he pointed the gun at Mitchell. Appellant testified the gun remained in his back pocket as he made his way to the back door of the residence. He stated that while he was on the back porch, Mitchell tried to get the gun and the gun fired into the air as they struggled over it. Appellant also testified he fired the gun into the air before he entered the residence "maybe to get their attention."

2

> On cross-examination, appellant stated he had had an argument with [Sandra] Walden on the telephone prior to the incident. He also admitted he had consumed alcohol that day.

Walden v. Commonwealth, No. 1594-14-3, slip op. at 3-4 (Va. Ct. App. Apr. 2, 2015), ECF No. 7-5.

On July 31, 2014, the Pittsylvania County Circuit Court convicted Walden of armed statutory burglary, two counts of attempted murder, assault and battery on a police officer, use of a firearm in commission of a felony, and property damage. The circuit court sentenced him to thirty-four years and twelve months' imprisonment, with sixteen years and twelve months suspended. Walden's direct appeals were unsuccessful. Walden then filed a petition for a writ of habeas corpus in the Virginia Supreme Court, arguing that the circuit court abused its discretion by denying his motion to separate the victim witnesses and that counsel was ineffective for not proffering facts supporting the motion to separate the victim witnesses. Several weeks later, Walden filed a motion to amend his habeas petition, alleging four new grounds of ineffective assistance. The Supreme Court of Virginia denied Walden's motion to amend and later dismissed the petition.

## II.

On August 18, 2017, Walden filed the present petition, raising the following claims:[2]

1. The trial court abused its discretion in denying Walden's motion to separate the victim witnesses, and the Court of Appeals erred by affirming the trial court's ruling;

2. Counsel failed to move the trial court to suppress the gun evidence prior to trial;

---

[2] The court has reordered Walden's claims for purposes of clarity and efficiency.

3. Counsel failed to proffer evidence in support of Walden's motion to separate the victim witnesses;

4. Counsel failed to investigate a defense witness prior to trial;

5. Counsel failed to seek a plea agreement from the Commonwealth; and

6. Counsel failed to develop and put on a reasonable defense.

Respondent acknowledges that Walden's petition is timely filed.

### III. Standards of Review

*A. Exhaustion and Procedural Default*

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)).

"If a claim is defaulted, then petitioner must fail on that claim unless he can show that cause and prejudice or a fundamental miscarriage of justice might excuse his default." Bell v. True, 413 F. Supp. 2d 657, 676 (W.D. Va. 2006) (citing Fisher v. Angelone, 163 F.3d

835, 844 (4th Cir. 1998)). The "cause" prong requires a petitioner to demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). The "prejudice" prong requires a petitioner to show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id. Meanwhile, the fundamental miscarriage of justice exception requires a petitioner to prove his actual innocence. A colorable claim of actual innocence can serve as a "gateway" to secure the adjudication of an otherwise unreviewable claim. Schlup v. Delo, 513 U.S. 298, 315 (1995).

A federal habeas petitioner may also satisfy the "cause" requirement of an otherwise procedurally defaulted claim of ineffective assistance if:

> (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding."

Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (quoting Trevino v. Thaler, 569 U.S. 413, 423 (2013)). A "substantial" claim is one that has merit. Martinez v. Ryan, 566 U.S. 1, 14 (2012).

*B. Merits Standard*

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

5

Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (omitting internal quotations).

Meanwhile, to state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged Strickland v. Washington test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id. at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014). When reviewing a Strickland claim under the AEDPA, the court's review is "doubly" deferential. See Richter, 562 U.S. at 105.

6

For <u>Strickland</u>'s first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687-88. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or common custom." <u>Richter</u>, 562 U.S. at 105 (quoting <u>Strickland</u>, 466 U.S. at 690). For the second prong, a petitioner must demonstrate that, but for counsel's alleged error, there is a "reasonable probability that the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." <u>Id.</u>

"Bare allegations" of constitutional error are not sufficient grounds for habeas relief; the petitioner must proffer evidence to support his claims. <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1135 (4th Cir. 1992). Moreover, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999); <u>see also</u> <u>Moore v. United States</u>, 934 F. Supp. 724, 731 (E.D. Va. 1996).

### IV. Analysis

*A. Exhaustion and Procedural Default*

Respondent acknowledges that Walden properly exhausted Claims 1 and 3. However, Walden attempted to raise Claims 2, 4, 5, and 6 on state habeas through a motion to amend, but the Supreme Court of Virginia denied the motion as untimely. <u>See</u> Order Denying Mot. to Am., <u>Walden v. Clarke</u>, No. 170431 (Va. May 25, 2017), ECF No. 7-11.

7

Therefore, he failed to properly raise Claims 2, 4, 5, and 6 in the Supreme Court of Virginia, and those claims are exhausted but defaulted under Baker. Moreover, Walden cannot now return to state court to exhaust his claims because another state habeas petition would be both untimely and successive: his direct appeal became final in 2016 and he previously filed a habeas petition in the Supreme Court of Virginia. See Baker, 220 F.3d at 288; Va. Code § 8.01-654(A)(2) (requiring state habeas petition to be filed within one year from the final disposition of direct appeal); Va. Code § 8.01-654(B)(2) (requiring habeas petition to contain all allegations known to petitioner at the time of filing and barring successive petitions attacking the same conviction); Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 584, 587-88 (E.D. Va. 2006 (holding that claims barred by Va. Code § 8.01-654(A)(2) are not reviewable by federal habeas courts); Gray, 518 U.S. at 162 (same for Va. Code § 8.01-654(B)(2)).

Walden argues that he can demonstrate cause and prejudice to excuse his defaults. To establish cause, he asserts that he made every effort to timely file a habeas petition,[3] but he was unable to discover that the Supreme Court of Virginia denied his direct appeal until March 17, 2017, by which time the state habeas statute of limitations had almost expired. Walden alleges that, because of his attorney's failure to update him regarding his direct appeal, he was unable to acquire his file and trial record that he needed to properly prepare his petition. Walden moved the Supreme Court of Virginia to extend the habeas limitations period, but the court denied the motion on March 24, 2017. Walden then filed a timely petition on March 27, 2017.

---

[3] "[Walden's] counsel failed to advise him of the status of his appeal throughout the entire appeal process. Letters written to [counsel] went unanswered and telephone calls . . . proved ineffective." Pet'r's Pet. Attach. B, at 2, ECF No. 1.

8

However, on May 1, 2017, Walden sought to supplement his initial petition by filing a motion to amend. He added the arguments that he currently raises in Claims 2, 4, 5, and 6. The court denied the motion, presumably because the habeas statute of limitations had expired under Va. Code § 8.01-654(A)(2). See Order Walden v. Clarke, No. 170431 (Va. May 25, 2017) (dismissing the motion to amend without analysis); Va. Sup. Ct. R. 5:7(e) (barring a habeas petitioner from filing a leave to amend once the statute of limitations expires). In its final judgment, the court only addressed the claims that Walden raised in his initial filing. Walden also argues that he can demonstrate prejudice because, but for counsel's lack of communication, he would have properly exhausted the defaulted claims.

Walden fails to demonstrate cause and prejudice, or a fundamental miscarriage of justice.[4] First, Walden cannot assert counsel's failure to notify him of the outcome of his direct appeal to establish cause for his procedural default because he did not raise counsel's lack of communication as an independent ineffective assistance claim in the state court. See Murray v. Carrier, 477 U.S. 478, 489 (1986) ("[A] claim of ineffective assistance [is generally required to be] presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (citing Rose v. Lundy, 455 U.S. 509, 518 (1982)).

Second, Walden has not shown that objective factors prevented him from raising his claims at an earlier stage. He complains that he repeatedly contacted counsel for an update on his appeal but never received a reply. However, he proffers no evidence supporting his allegation beyond conclusory statements. Furthermore, Walden's filings indicate that he

---

[4] Walden does not cite Schlup and he does not present any new compelling evidence unavailable at trial or on appeal. See Burket v. Angelone, 208 F.3d 172, 183 n.10 (4th Cir. 2000) (finding that as petitioner bears burden to raise actual innocence, a court need not consider it if not asserted by petitioner).

9

could have cured any communication problem by personally reaching out to counsel, instead of having non-authorized third parties contact counsel on his behalf.[5] Walden also waited for years before eventually corresponding with the Court of Appeals of Virginia and discovering that the Supreme Court of Virginia had denied his direct appeal on March 29, 2016. Even assuming that counsel did not notify Walden of the outcome of his direct appeal, Walden's failure to research his case is not an objective factor that prevented him from properly raising his claims because Walden was ultimately responsible for his collateral review proceeding.

Alternatively, Walden asserts that Martinez excuses his default because (1) his claims are substantial, (2) he had no counsel on collateral review, (3) his state habeas was the first review proceeding that he could have raised the ineffective assistance of counsel claims, and (4) Virginia law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding. However, Martinez can only establish cause, and Walden's single conclusory sentence that: "his claims are substantial and, in the interest of justice, should be reviewed" is not sufficient to establish prejudice. Nevertheless, the court will address the substantiality of his defaulted claims.

## B. Merits Review

In Claim 1, Walden contends that the trial court erred by denying his motion to separate the victim witnesses and the Court of Appeals of Virginia erred by affirming the trial court's judgment. In general, "it is not the province of a federal habeas court to

---

[5] Walden includes correspondence with the Court of Appeals of Virginia and a notarized letter from Kenneth Worley. The Deputy Clerk of the Court of Appeals of Virginia directed Walden to discuss his case with counsel but ultimately informed Walden of his case's disposition. Meanwhile, the Worley letter states that Worley contacted counsel multiple times in November 2016 seeking legal updates, but that counsel declined to comment.

reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)). Here, Claim 1 complains that state courts committed errors in deciding a matter of state law, and Walden does not argue that the state courts' decisions implicated federal law.[6] Therefore, Claim 1 is not cognizable on federal habeas review, and the court will grant the motion to dismiss.

In Claim 3, Walden alleges that counsel was ineffective for failing to factually support the motion to separate the victim witnesses at trial and on direct appeal. On habeas review, the Supreme Court of Virginia concluded that the claim did not satisfy either prong of Strickland:

> Pursuant to [Va.] Code § 19.2-265.01, victim witnesses must be permitted to stay in the courtroom during the trial unless the trial court determines the presence of the victim witness "would impair the conduct of a fair trial." The record, including the trial transcript, demonstrates counsel argued the victim witnesses should not be permitted to remain because their testimony could change if they were permitted to hear each other's testimony. The trial court denied the motion to separate the victim witnesses, holding counsel's argument to be speculative. Petitioner fails to articulate any facts trial counsel could have proffered to support the motion to separate the witnesses or to explain why the proffer of additional facts by counsel would have led the court to grant counsel's motion. Petitioner also does not explain how the witnesses' testimony changed because they heard testimony from other witnesses. Thus, petitioner has failed to demonstrate there is a reasonable probability that, but for counsel's alleged errors, the results of the proceeding would have been different.

---

[6] A matter of state law may properly concern a federal habeas court if it "impugns the fundamental fairness of the trial." Stockton v. Virginia, 852 F.2d 740, 748 (4th Cir. 1988) (citing Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960)). The Supreme Court has defined "the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). Due process is only violated "when the error complained of is so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infects the trial." McCafferty v. Leapley, 944 F.2d 445, 452 (8th Cir. 1991). Walden has not alleged that fundamental fairness required victim witness separation in his case. Therefore, he has not demonstrated that the error complained of fatally infected his trial.

11

> . . . .
>
> . . . Petitioner fails to proffer facts appellate counsel should have "articulated" to the appellate court, and fails to address how these unspecified facts would have changed the outcome of his appeal. Moreover, appellate counsel could reasonably have determined any attempt to argue facts in support of the motion to separate that had not been raised in the trial court would have been futile. See [Va. Sup. Ct.] Rule 5A:18. Thus, petitioner has failed to demonstrate there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Walden v. Clarke, No. 170431, slip op. at 2.

The court agrees with the state court's analysis. Under Nickerson, a federal habeas petitioner must present evidence demonstrating that he is entitled to relief, and Walden fails to do so. He has not proffered any facts, law, or arguments that counsel should have presented to support the motion to separate witnesses. Therefore, the state court's adjudication was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of facts. The court will grant the motion to dismiss as to Claim 3.

### C. *Martinez* Review

In Claim 2, Walden contends that counsel was ineffective for failing to seek suppression of the firearm evidence on chain of custody grounds. In support of his argument, Walden states that "the gun at issue changed hands several times before eventually being turned over to law enforcement. The live rounds, spent shell casings, and/or the gun itself could have been manipulated and/or procured from any point along the path to and

12

from the neighbor's house prior to officers . . . taking possession." Pet'r's Pet. Attach. A at 4, ECF No. 1.

First, Walden fails to establish that a motion to suppress would have succeeded and/or altered the outcome of the trial. Under Virginia law, "[w]here there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence." Reedy v. Commonwealth, 9 Va. App. 386, 391, 388 S.E.2d 650, 652 (1990) (citations omitted). Second, evidence issues are generally not cognizable on federal habeas review because they do not involve federal law. See Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules."). Third, any chain of custody argument would not have changed the outcome of the trial because Walden admitted to possessing and firing the gun, as well as wrestling with Mitchell over the firearm. Trial Tr. 292-296 (Walden testified that "he shot up in the air with [the gun]" upon arrival at the residence and later Mitchell tried to grab the gun from him and they "[w]restled on the patio."). Therefore, the court will grant the motion to dismiss as to Claim 2 because it is insubstantial and the default is not excused by Martinez.

In Claim 4, Walden argues that counsel was ineffective for failing to investigate a witness, Greg Hedrick, before calling him to testify in Walden's defense. First, even assuming that counsel did not investigate Hedrick fully, Walden has not proffered any evidence detailing what counsel would have discovered. Walden's failure to proffer is fatal to his claim. See Nickerson, 971 F.2d at 1136. Second, Walden relies on a single conclusory

sentence to establish his claim: "[Hedrick's] evidence was not only irrelevant; it was prejudicial, as it corroborated the Commonwealth's witnesses['] version of a gun being involved and shots fired." Pet'r's Pet. Attach. A at 5. Walden possessing and firing a gun were undisputed facts, and counsel calling a witness to corroborate undisputed facts may have resulted in the introduction of some cumulative evidence, but it is not ineffective assistance of counsel. Lastly, counsel had significant latitude in deciding to have Hedrick testify because "which witnesses to call is a classic tactical decision left to counsel." United States v. Chapman, 593 F.3d 365, 369 (4th Cir. 2010). Therefore, the court will grant the motion to dismiss as to Claim 4 because it is insubstantial and the default is not excused by Martinez.

In Claim 5, Walden asserts that counsel was ineffective for failing to seek a plea agreement from the Commonwealth. Generally, defining the duty and responsibilities of defense counsel in the plea bargaining process "is a difficult question." Missouri v. Frye, 566 U.S. 134, 144 (2012). "The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." Id. at 145. Despite the absence of detailed standards of plea negotiation, the Supreme Court has determined that erroneous advice that leads to the rejection of a favorable plea, Lafler v. Cooper, 566 U.S. 156, 163-64 (2012), and failure to communicate a plea offer that later expires, Frye, 566 U.S. at 147, both constitute deficient performance. Moreover, a petitioner must also prove prejudice by showing a reasonable probability that: the petitioner would

14

have accepted the plea bargain, the prosecution would not have withdrawn the offer, and the court would have accepted it. Frye, 566 U.S. at 146-48.

Walden has not supported his claim with evidence: Walden did not deny a plea bargain based on erroneous advice, counsel did not fail to notify Walden regarding an expiring plea offer, and Walden has not demonstrated that the prosecution would have entered and the trial court would have accepted an agreement. Therefore, the court grants the motion to dismiss as to Claim 5 because it is insubstantial and the default is not excused by Martinez.

In Claim 6, Walden states that counsel was ineffective for: improper examination of witnesses, improper objections in lieu of cross-examinations, attempts to improperly introduce evidence, improper objections to leading questions on the Commonwealth's cross-examinations, going outside the scope of proper examinations of witnesses, asking defense witnesses nonsensical questions, failing to make reasonable arguments in his motion to strike, failing to proffer any controlling authority to support his arguments, and failing to proffer adequate evidence or argument at Walden's sentencing hearing.

At the threshold, Walden's broad claims do not satisfy either prong of Strickland because he has not detailed any specific acts by counsel that were improper. See Nickerson, 971 F.2d at 1136. Further, Walden's conclusory allegations regarding counsel's actions in witness examination are matters of trial tactics that should not be second-guessed on habeas review. Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978); see also United States v. Clayborne, 509 F.2d 473, 479 (D.C. Cir. 1974) (asserting that "[t]he decision to cross-examine a witness is peculiarly one for defense counsel and his judgment should be entitled

15

to great respect by the court"). Further, to any extent that Walden claims "cumulative prejudice," "an attorney's acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" Fisher v. Angelone, 163 F.3d 835, 853 (4th Cir. 1998) (quoting Wainwright v. Lockhart, 80 F.3d 1226, 1133 (8th Cir. 1996)). Therefore, the court will dismiss Claim 6 because it is insubstantial and the default is not excused under Martinez.

V.

For the reasons stated, the court **GRANTS** the motion to dismiss. Walden's petition is partially procedurally defaulted and otherwise without merit. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Walden and to counsel of record for Respondent. Further, finding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

ENTER: This 19 day of May, 2018.

/s/ Michael F. Urbanski
Chief United States District Judge